UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
                                                                   :
NEW YORK CITY DISTRICT COUNCIL OF                                  :        16-CV-3429 (ARR)(ST)
CARPENTERS,                                                        :
                                                                   :        <u>NOT FOR ELECTRONIC</u>
                              Petitioner,                          :        <u>OR PRINT PUBLICATION</u>
                                                                   :
         -against-                                                 :        <u>OPINION & ORDER</u>
                                                                   :
TRUSTEES OF THE NEW YORK CITY DISTRICT                             :
COUNCIL OF CARPENTERS WELFARE FUND, NEW                            :
YORK CITY DISTRICT COUNCIL OF CARPENTERS                           :
APPRENTICESHIP, JOURNEYMAN, RETRAINING,                            :
EDUCATIONAL & INDUSTRY FUND, TRUSTEES OF                           :
THE NEW YORK CITY CARPENTERS RELIEF AND                            :
CHARITY FUND, AND THE NEW YORK AND                                 :
VICINITY CARPENTERS LABOR MANAGEMENT                               :
CORPORATION,                                                       :
                                                                   :
                              Intervenor Plaintiffs,               :
                                                                   :
         -against-                                                 :
                                                                   :
BEST MADE FLOORS, INC.,                                            :
                                                                   :
                              Respondent.                          X
------------------------------------------------------------------


ROSS, United States District Judge:

         Petitioner, New York City District Council of Carpenters (the "Union"), and plaintiff-

interveners, Trustees of the New York City District Council of Carpenters Welfare Fund, New

York City District Council of Carpenters Annuity Fund, New York City District Council of

Carpenters Apprenticeship, Journeyman, Retraining, Education and Industry Fund, Trustees of

the New York City Carpenters Relief and Charity Fund, and the New York and Vicinity

Carpenters Labor Management Corporation (collectively, the "Funds"), move to enforce two

arbitration awards against respondent, Best Made Floors, Inc. ("Best").  <u>See</u> Pet. to Confirm

Arbitration Award, ECF No. 1 ("Pet."); Mem. of Law in Supp. of Pls.-Intervenors' Opp'n to

Def.'s Mot. to Vacate and Pls.-Intervenors' Cross-Mot. to Confirm an Arbitration Award, ECF

No. 24 ("Funds' Mem.").  The Union also sought to enforce a third award, see Pet. at 6, then

moved to remand it for further arbitration proceedings, see Decl. of Lydia Sigelakis, ECF No.

23-1 ("Sigelakis Decl."), at ¶ 2, before now seeking to reform the arbitration award, see Decl. of

Patrick Kennedy, ECF No. 35 ("Kennedy Decl."), at ¶ 10.  Best moves to vacate all three

awards.  Def.'s Mem. of Law in Supp. of Mot. to Vacate, ECF No. 17 ("Resp.'s Mem.").  For the

reasons that follow, Best's motions to vacate are denied, the Union's motion to enforce is

granted, the Union's motion to reform is denied, and the Funds' motion to enforce is granted.

## BACKGROUND

### A.  Collective Bargaining Agreement

The following facts are undisputed unless otherwise noted.  The employment relationship

between Union members and Best was at all relevant times governed by a collective bargaining

agreement.  See Decl. of Christopher Ozard in Supp. of Pls.'-Intervenors' Opp'n to Def.'s Mot.

to Vacate and Pls.'-Intervenors' Cross-Mot. to Confirm an Arbitration Award, ECF No. 26

("Ozard Decl."), Ex. A ("CBA").[1]

The CBA includes a dispute resolution procedure.  The relevant portions are as follows:

Section 2.  Any grievance not resolved shall be submitted to arbitration before
Roger Maher, Robert Silagi, Joseph W. Lipowski or Robert Herzog who shall
serve as permanent arbitrator(s) hereunder.  The arbitrator shall have the right to
conduct an ex-parte hearing in the event of the failure of either party to be present
at the time and place designated for arbitration, and shall have the power to render
a decision based on the testimony before him at such hearing. The decision of the
arbitrator shall be final and binding upon both parties and may be entered as a

---

[1] The details about various extensions of the CBA are not relevant to this motion and
therefore omitted.  The parties do not dispute that this is the operative agreement.  For ease of
reference, I cite only to the complete, executed agreement provided by the Funds.

final decree or judgment . . . in a court of appropriate jurisdiction . . .

Section 3. It is the intent of the parties hereto that all disputes between them, both within and outside of the Agreement, shall be submitted to arbitration and that no defense to prevent the holding of the arbitration shall be permitted. Service of any documents or notice referred to above, or service of any notice required by law in connection with arbitration proceedings may be made by registered or certified mail. A post office receipt shall be conclusive evidence of proper service if mailed to the address designated by the Employer when it signed the agreement. If certified or registered mail is refused or not picked up, ordinary mail shall be deemed sufficient service provided that it is forwarded to the address of record contained in this agreement.

Section 4. Upon the confirmation of the arbitrator's award, the prevailing party shall, or on any appeal therefrom, be entitled to receive all court costs in each proceeding as well as reasonable counsel fees.

CBA at 44-46. The only address given for Best in the CBA is 172 Division Street, Brooklyn, NY. See CBA at 1.[2]

The CBA provides that "[w]ages [may] be paid at the Employer's option, either in cash, in envelopes, upon the outside of which shall be plainly marked the Employer's name, the employee's name and number, Social Security number, the hours worked and the amount of money enclosed, or by check." Id. at 13-14. However, the CBA later provides that "[a]ny Employer found guilty of offering cash to Floor Coverers for hours worked shall pay a fine of five thousand ($5,000.00) dollars to the Carpenter's Relief and Charity Fund after he has paid monies that were due to the Benefit Funds." Id. at 42-43.

The meaning of this penalty provision, which is disputed by the parties, is unclear from the face of the contract. Best argues that the penalty provision applies only when the employer has not made benefit payments. Def.'s Decl. in Supp. of Mot. to Vacate Arbitration Awards, ECF No. 16 ("Ostreicher Decl."), at ¶ 30. The Union, on the other hand, contends that the

---

[2] Respondent admits that Best's offices are located at 172 Division Street. Def.'s Reply Decl., ECF No. 28, at ¶ 15.

penalty applies when the employer pays an employee in cash without the required information written on the outside of the envelope, regardless of whether benefit payments have been made. Pet'r's Mem. of Law in Further Supp. of Pet. to Confirm Arbitration Awards & Opp'n to Mot. to Vacate Arbitration Awards, ECF No. 33 ("Pet'r's Reply"), at 2-3.

Finally, the CBA requires Best to remit contributions to the Funds for every hour worked by its employees within the trade and geographical jurisdiction of the Union. CBA at 24.[3] The Funds are entitled to attorneys' fees for any action to collect delinquent contributions. Id. at 30-31.

## B. November 3 Award

Between April and September 2015, the Union delivered to Best written demands to arbitrate certain disputes. Pet. ¶ 8; Ostreicher Decl. ¶ 5. A hearing was held before Roger Maher (the "Arbitrator") on October 21, 2015. Pet. ¶ 9.[4] Representatives from Best attended. Id.; Ostreicher Decl. ¶ 5.[5] This hearing addressed Best's alleged failure to pay Union employee Jeffrey Tolk for work during the weeks ending May 12, May 19, and May 26, 2013. Pet. ¶ 7; Ostreicher Decl. ¶ 6; Arbitrator's Award, Pet. Ex. D, ECF No. 1-4 ("November 3 Award"), at 2.

Tolk testified at the hearing that he had not been paid for work during the disputed weeks. Aff. in Opp'n to Mot. to Vacate Arbitration Award, ECF No. 23-2 ("Liang Aff."), at ¶¶ 7-8; Ostreicher Decl. ¶ 6. Pinches Ostreicher, a principal of Best, testified that he often paid

---

[3] A second agreement also requires Best to remit contributions to the Funds. See Ozard Decl. ¶¶ 4, 7-9; id. at Ex. C, D, E.

[4] Respondent neither confirms nor disputes the date of the initial hearing. According to the Arbitrator, the hearing was initially scheduled for September 17, 2015. Arbitrator's Award, Pet. Ex. D, ECF No. 1-4, at 2. When Best did not appear, the arbitration was rescheduled. Id.

[5] Notice of this arbitration was sent to 172 Division Street, Brooklyn, NY. See Pet. Ex. B.

employees in cash. Liang Aff. at ¶ 7; Ostreicher Decl. ¶ 7. The Arbitrator asked Best to provide the certified payroll record it should have submitted to the state agency with which Best was under contract. Ostreicher Decl. ¶ 18; November 3 Award at 3. Best was unable to locate this record and instead submitted a "spread sheet [sic] that was taken from [Best's] hand maintained records." Ostreicher Decl. ¶ 18; see also November 3 Award at 3. According to respondent, "the Union had the certified payroll." Ostreicher Decl. ¶ 18.

Best also played a phone message left by Tolk for the Arbitrator. Liang Aff. ¶ 10; Ostreicher Decl. ¶ 15. According to Best, this message showed "that Tolk's claim was simply retribution because we were unable to provide him with certain employment." Ostreicher Decl. ¶ 11. The record contains the following transcription of the phone message played for the arbitrator:

> You lied to me again, Pinchas. I told you I want hours, I'm not looking for anything for nothing, but the deal was I'd come in Friday, ok, and I would work 10 hours and I would work whatever hours I want. Double on Monday and a double on Tuesday or up to whatever times you told me to work on Tuesday, ok, they got nothing right down there, you got two old farts who have no [expletive] clue how to run a job, that's Tommy and Bobby, and instead we had this whole conversation and it went out the window. So therefore, all I can say is you're a liar. You lied to me. I was supposed to be here on Friday. And if you can't grant work, get your [expletive] out of bed in the morning and make sure they have classrooms ready.

Id. This message was dated May 9, 2013. Id.

According to Best, its representative attempted to play two additional phone messages, but the Arbitrator "refused to even consider" them. Id. ¶ 15. These messages were dated May 12, 2013, and June 4, 2013. Id. ¶¶ 12-13. Tolk claimed to have not been paid for the weeks ending May 12, 2013, May 19, 2013, and May 26, 2013. November 3 Award at 2. According to Best, the fact that Tolk did not demand payment in these messages, which postdated the alleged underpayments, shows that the claim "was entirely made up" and "simply retribution" for the

dispute referenced in the May 9, 2013 phone message.  Ostreicher Decl. ¶¶ 11, 14-15.

According to the Union, "[t]he arbitrator said that the [May 9, 2013] tape did not help him in

determining whether or not the employer violated the CBA.  He also said if the other tapes were

similar, they would not be relevant to the proceeding."  Liang Aff. ¶ 10.[6]

The parties also dispute whether Best was able to call a particular witness, supervisor

Tom Ahern.  Ostreicher Decl. ¶ 8.  Respondent alleges that Ahern would have confirmed that

Best had paid Tolk for the work done during the disputed weeks.  Id.  According to respondent,

the Union then threatened that if Ahern testified, the Union "would institute charges against and

punish [Ahern]."  Id. ¶ 9; see also Def.'s Reply Decl., ECF No. 28 ("Ostreicher Reply Decl."), at

¶ 7 ("The Union stated that [Ahern] would be sanctioned if he testified in support of Best.").

Best alleges that the arbitrator refused to (1) require the Union to produce Ahern without threat

of retaliation, Ostreicher Decl. ¶¶ 10, 24, or (2) use his own power to subpoena Ahern,

Ostreicher Reply Decl. ¶ 8.

The Union disputes this account.  According to a Union employee present at the

arbitration:

> Although Mr. Ostreicher mentioned supervisor Tom Ahern, the employer did not
> produce Mr. Ahern as a witness.  At no point during my presence did anyone
> from the Union threaten to retaliate against Mr. Ahern if he testified.  As I recall,
> the employer was advised that Mr. Ahern may not agree to testify if his testimony
> would involve admitting to things for which he may be brought up on internal
> charges (such as violating the CBA).  But no one from the Union communicated
> this to Mr. Ahern, and no threat was made to bring Mr. Ahern up on charges.
> Best Made Floors was free to produce its own employee, Mr. Ahern, without any
> order from the Arbitrator.  There was no reason that the Union would have to
> produce Mr. Ahern since the Union is not his employer.

Liang Aff. ¶ 9; see also Kennedy Decl. ¶¶ 6-7.  According to the Arbitrator, "[a]t the conclusion

---

[6] In its briefing, respondent agrees that the Arbitrator made this statement.  Reply Mem.
of Law, ECF No. 29, at 3.

of the Hearing both Parties stated that they had presented their respective cases in full." November 3 Award at 2.

Finally, respondent claims that the Arbitrator privately spoke to Best's representative "and in essence demanded that regardless of the merits, that we settle the grievances which had been filed by making a payment." Ostreicher Decl. ¶ 16. Best's representative "understood that [the Arbitrator] was asking for a payoff or something similar to a payoff." Id.; see also id. at ¶ 21 (characterizing the conversation as an "extortionate threat."). According to Best, the Arbitrator also "stated if we did not settle without a decision as he demanded, he would rule against us and also issue a very substantial penalty award against us because we had paid our workers in cash." Ostreicher Decl. ¶ 16; see also id. at ¶ 21 ("[A]t the arbitration, arbitrator Maher stated that if we did not immediately settle and make the payment he was demanding, he would rule against us and impose substantial penalties."), ¶ 24 ("The arbitrator himself threatened that if we did not settle the matter as he demanded, he would impose substantial penalties on us because we had paid our workers in cash."). The Union denies that this exchange ever happened. Liang Aff. ¶ 11; Kennedy Decl. ¶ 6.

On November 3, 2015, the Arbitrator issued an award in favor of Tolk, finding that Best had violated the CBA by failing to pay Tolk a total of 98 hours of wages earned during May 2013. November 3 Award at 3. The Arbitrator directed Best to pay: (1) $5,399.60 in wages, less statutory deductions, to Tolk ($4,753.50 for work performed and $646.10 as a contractual late fee); (2) $549.78 in benefits contributions to the Funds; and (3) its portion of the Arbitrator's fees. Id

Best has not paid any portion of this award. Pet. ¶ 20; see Ostreicher Decl. ¶ 22. Best claims it never received a copy of the November 3 Award. Ostreicher Decl. ¶ 22. The Union

alleges that the Arbitrator sent a copy of the award via certified mail to 172 Division Street, Brooklyn, NY. Pet. ¶ 12; id. at Ex. D. The record contains a copy of this letter, which lists a reference number for "certified mail, return receipt requested." Pet. Ex. D, at 4. The Union alleges that it also sent Best a letter enclosing the award, via certified mail, on November 6, 2015. Pet. ¶ 12; id. at Ex. F. The record does not contain a return receipt for either of these letters. While respondent does not acknowledge receipt of the letters, it does not deny that they were sent. See Ostreicher Reply Decl. at ¶ 15.

**C. June 7 Award**

A second hearing was held on May 24, 2016. Liang Aff. ¶ 13. Best did not attend. Id. According to the Union, at the October 21 hearing, the Union "advised that it would be filing a new grievance for the employer's improper format of cash payments to employees . . . [and] the parties agreed to only hear the grievance brought on behalf of Mr. Tolk [on October 21]." Liang Aff. ¶ 7. Best apparently assumed that the October 21 hearing addressed all grievances between Best and the Union. See Ostreicher Decl. ¶¶ 5, 21. This explanation for Best's absence at the second hearing is contradicted elsewhere in respondent's submissions, where respondent agreed that the November 3 Award did not resolve all grievances that had been submitted for arbitration. Id. ¶ 23. Regardless, Best admits that it was aware that a second hearing would be held. Id. ¶ 21 ("It is true that we did not get to the second grievance at the session and the arbitrator in substance stated that he would pick a new day for the hearing on the remaining second grievance.").

According to the Union, at the May 24 hearing, two Best employees "testified that, on multiple occasions, they were paid in cash without any notations from the employer of hours worked, wage rate, or withholdings." Liang Aff. ¶ 14. According to the Union, this violated the

CBA, which required that cash payments be made "in envelopes, on the outside of which shall be plainly marked the Employer's name, the employee's name and number, Social Security number, the hours worked and the amount of money enclosed, or by check." CBA at 13-14.

On June 7, 2016, the Arbitrator issued an award in favor of the Union, ordering Best to pay: (1) a $50,000 penalty, payable to the Carpenters' Relief and Charity Fund; (2) its portion of the Arbitrator's fees; and (3) any reasonable attorneys' fees associated with enforcement of the June 7 Award. Arbitrator's Default Award, Pet. Ex. H, ECF No. 1-8 ("June 7 Award"), at 2. Respondent has not paid any portion of this award. Pet. ¶ 20.[7]

It is unclear how the Arbitrator calculated the $50,000 penalty. The CBA provides that "[a]ny Employer found guilty of offering cash to Floor Coverers for hours worked shall pay a fine of five thousand ($5,000.00) dollars to the Carpenter's Relief and Charity Fund." CBA at 42-43. The Arbitrator found that Best had improperly paid cash to two employees: (1) Tolk, for an unknown number of violations during the period March 18, 2013, through April 26, 2013, and (2) Brian Troichuk, on three separate occasions. June 7 Award at 2. However, the Arbitrator characterized his award as "$25,000.00 for each of two incidents." Id.

### D. August 15 Award

Pursuant to their agreements with Best, the Funds conducted an audit of Best's required remittances covering the period June 6, 2012 through December 31, 2013. Ozard Decl. ¶ 11; Ostreicher Decl. ¶ 33. The audit initially determined that Best failed to remit contributions during that period in the amount of $1,697.00. Ozard Decl. ¶ 12; Ostreicher Decl. ¶ 34.

Best challenged the audit's findings by submitting affidavits from its employees stating that they had worked fewer hours --- and were thus entitled to less contributions --- than found

---

[7] Respondent does not allege that it has paid any portion of the disputed awards.

by the auditors.  Ozard Decl. ¶ 15; Ostreicher Decl. ¶¶ 35-40.  After several email exchanges

between Best and the Funds regarding the proper format for the affidavits, the Funds accepted

the affidavits from Best on September 4, 2016.  Ozard Decl. ¶ 15; Ostreicher Decl. ¶¶ 35-40;

Ostreicher Decl. Ex. J.  The Funds nonetheless decided to arbitrate the dispute.  Ozard Decl. ¶

16.[8]

A hearing was held before the Arbitrator on August 10, 2016.  Op. and Default Award of

Arbitrator, Ozard Decl. Ex. N, ECF No. 26-14 ("August 15 Award"), at 1; Ostreicher Decl. ¶ 41.

Best did not attend.  August 15 Award at 1-2; Ostreicher Decl. ¶ 41.  The affidavits submitted by

Best to the Funds were never provided to the arbitrator.  Ostreicher Decl. ¶ 44.[9]  At the hearing,

the principal amount requested by the Funds was increased to $4,744.28.  August 15 Award at 3;

Ostreicher Decl. ¶ 43.  According to the Funds, this "update[]" "account[ed] for delinquencies

revealed by new information."  Ozard Decl. ¶ 12.

On August 15, 2016, the Arbitrator issued an award finding that Best failed to remit all

required contributions to the Funds and ordering Best to pay the Funds $20,424.55.  August 15

Award at 3.  This award includes $4,744.28 in unpaid contributions, $2,625.86 in interest,

$3,731.91 in various contractual penalties, and $9,322.50 in costs for the arbitration and audit.

Id.

Respondent alleges that Best was unaware of the hearing.  Ostreicher Decl. ¶¶ 32, 41.  In

response, the Funds allege that (1) a Notice of Intention to Arbitrate was sent to 172 Division

---

[8] According to the Funds, their acceptance of the affidavits indicated approval of their
form and did not signify that they accepted their contents to be true.  Pls.-Intervenors' Opp'n to
Def.'s Mot. to Vacate and Pls.-Intervenors' Cross-Mot. to Confirm an Arbitration Award, ECF
No. 32, at 3 n.2.

[9] The Funds do not claim that these affidavits were provided to the Arbitrator.

Street, Brooklyn, NY, on May 25, 2016, via both regular and certified mail; (2) a Notice of Hearing was sent to 172 Division Street, Brooklyn, NY, on June 3, 2016, via regular and certified mail; and (3) a voicemail notifying Best of the upcoming arbitration was left at the phone number Best had provided the Funds on August 8, 2016.  Ozard Decl. ¶¶ 17-19.  The return receipts for the certified mailings were returned to the Funds unsigned.  Ozard Decl. Ex. J; id. at Ex. L.  The notices sent by regular mail were not returned to the sender.  Ozard Decl. ¶ 17.

**E.  Proceedings Before This Court**

On June 23, 2016, the Union filed its petition to confirm the November 3 and June 7 Awards.  Pet.  On September 6, 2016, Best filed a motion to vacate the November 3, June 7, and August 15 Awards.  Notice of Mot. to Vacate Arbitration Awards, ECF No. 15.  The Funds moved to intervene, on the agreement of the parties, on September 23, 2016.  Joint Stip. and Order Granting Pls.-Intervenors' Right to Intervene and to Modify the Briefing Schedule, ECF No. 20.  The court granted the Funds' motion to intervene the same day.  Order (Sept. 23, 2016). The Funds subsequently cross-moved to confirm the August 15 Award.  Notice of Pls.-Intervenors' Opp'n to Def.'s Mot. to Vacate and Pls.-Intervenors' Cross-Mot. to Confirm an Arbitration Award, ECF No. 24.

In its responsive briefing opposing Best's motion to vacate, the Union modified its petition to request that the June 7 Award be remanded "for further proceedings under the parties' collective bargaining agreement," instead of being confirmed.  Sigelakis Decl. ¶ 2.  In a declaration filed with its reply, the Union again changed the relief requested, moving that this court modify the June 7 Award by reducing the penalty from $50,000 to $10,000.  See Kennedy Decl. ¶ 10.  The Union did not explain the reason for this request, nor did it provide any legal analysis or authority supporting it.  See Pet'r's Reply.

# STANDARD OF REVIEW

A motion to confirm an arbitration award should be "treated as akin to a motion for summary judgment based on the movant's submissions." D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 109 (2d Cir. 2006). A party is entitled to summary judgment when it shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Only disputes over material facts – 'facts that might affect the outcome of the suit under governing law' – will properly preclude the entry of summary judgment." Local 339 United Serv. Workers Union v. Advanced Ready Mix Corp., No. 12-cv-4811(RRM)(VMS), 2013 WL 685447, at *2 (E.D.N.Y. Feb. 24, 2013) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); SCR Joint Venture L.P. v. Warshawsky, 559 F.3d 133, 137 (2d Cir. 2009)).

"Normally, confirmation of an arbitral award is 'a summary proceeding that merely makes what is already a final arbitration a judgment of the court.'" D.H. Blair, 462 F.3d at 110 (quoting Florasynth, Inc. v. Pickholz, 750 F.2d 171, 176 (2d Cir. 1984)). Judicial review of arbitral awards is "severely limited." Local 339 United Serv. Workers Union, 2013 WL 685447, at *2 (quoting Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp., 103 F.3d 9, 12 (2d Cir.1997)). The courts cannot review the merits of an arbitrated claim; they "have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim." United Steelworkers of Am. v. Am. Mfg., 363 U.S. 564, 568 (1960); see also United Paperworkers Int'l Union v. Misco, 484 U.S. 29, 36 (1987) ("The courts are not authorized to reconsider the merits of an award even though the parties may allege that the award

rests on errors of fact or on misinterpretation of the contract."); W.R. Grace & Co. v. Local Union 759, 461 U.S. 757, 764 (1983) ("Under well[-]established standards for the review of labor arbitration awards, a federal court may not overrule an arbitrator's decision simply because the court believes its own interpretation of the contract would be the better one.").

When the court reviews an award, "[t]he arbitrator's rationale for [the] award need not be explained, and the award should be confirmed 'if a ground for the arbitrator's decision can be inferred from the facts of the case.'" D.H. Blair, 462 F.3d at 110 (quoting Barbier v. Shearson Lehman Hutton, Inc., 948 F.2d 117, 121 (2d Cir. 1991)). "Only a 'barely colorable justification for the outcome reached' by the arbitrators is necessary to confirm the award." Id. (quoting Landy Michaels Realty Corp. v. Local 32B-32J Serv. Emps. Int'l Union, 954 F.2d 794, 797 (2d Cir. 1992)); see also United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38 (1987) ("As long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision."). Thus, a reviewing court must only ensure that the arbitrator "had some grounds on which to grant the damages spelled out in the [a]ward." Trustees of the Local 807 Labor Mgmt. Health Fund v. Express Haulage Co., No. 07 CV 4211, 2008 WL 4693533, at *5 (E.D.N.Y. Oct. 23, 2008).

"'A party moving to vacate an arbitration award has the burden of proof, and the showing required to avoid confirmation is very high.' In order to satisfy that burden, we require a party to show more than mere speculation . . . ." Ecoline, Inc. v. Local Union No. 12 of Int'l Ass'n of Heat & Frost Insulators, 271 F. App'x 70, 72 (2d Cir. 2008) (quoting D.H. Blair, 462 F.3d at 110). To meet this burden, a defendant is "required to controvert the allegations of the petition by 'specific facts showing that there is a genuine issue for trial.'" Stifel, Nicolaus & Co. v.

Forster, No. 14 Civ. 6523, 2015 WL 509684, at *5 (S.D.N.Y. Feb. 6, 2015) (quoting Parks Real

Estate Purchasing Grp. v. St. Paul Fire & Marine Ins. Co., 472 F.3d 33, 41 (2d Cir. 2006)).

"Affidavits advancing such facts must be based upon 'concrete particulars,' not conclusory

allegations or bald assertions or legal conclusions." Id. (quoting Schwapp v. Town of Avon, 118

F.3d 106, 111 (2d Cir. 1997)).

 The Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA"), provides for vacatur only in

the following circumstances:

(1) where the award was procured by corruption, fraud, or undue means;
(2) where there was evident partiality or corruption in the abitrators . . .
(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).  As a "judicial gloss" on these grounds, the Second Circuit allows vacatur if the

award was rendered in "manifest disregard of the law."  Schwartz v. Merrill Lynch & Co., 665

F.3d 444, 451 (2d Cir. 2011).  In some cases, vacatur may be allowed if "the award violates

public policy."  Huntington Hosp. v. Huntington Hosp. Nurses' Ass'n, 302 F. Supp. 2d 34, 39

(E.D.N.Y. 2004).

 An order modifying or correcting an arbitration award may be made:

(a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award[;]
(b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted[; or]
(c) Where the award is imperfect in matter of form not affecting the merits of the controversy.

9 U.S.C. § 11.

"A remand for further arbitration is appropriate only in certain limited circumstances such as when an award is incomplete or ambiguous." Ottley v. Schwartzberg, 819 F.2d 373, 376 (2d Cir. 1987) (quoting United Steel Workers v. Adbill Mgmt. Corp., 754 F.2d 138, 141 (3d Cir. 1985)); see also Telenor Mobile Commc'ns AS v. Storm LLC, 351 F. App'x 467, 469 (2d Cir. 2009); Hyle v. Doctor's Assocs., 198 F.3d 368, 370 (2d Cir. 1999).

## DISCUSSION

### A. November 3 Award

Respondent argues that the November 3 Award should be vacated because the arbitrator acted improperly by (1) failing to consider the voicemails Best offered into evidence, (2) declining to subpoena Ahern to testify, (3) refusing to require the Union to call Ahern to testify without conditions, and (4) threatening stiff sanctions if Best did not settle the dispute. Ostreicher Decl. ¶¶ 10, 16, 19; Reply Mem. of Law, ECF No. 29 ("Resp.'s Reply"), at 3-5.

First, respondent argues that the award should be vacated because the Arbitrator failed to consider voicemails Best offered into evidence. Resp.'s Mem. at 3-4. However, "the Second Circuit does not recognize manifest disregard of the evidence as proper ground for vacating an arbitrator's award." Wallace v. Buttas, 378 F.3d 182, 193 (2d Cir. 2004) (quoting Success Sys., Inc. v. Maddy Petroleum Equip., Inc., 316 F. Supp. 2d 93, 94 (D. Conn. 2004)). "[E]xcept when fundamental fairness is violated, arbitration determinations will not be opened up to evidentiary review." Tempo Shain Corp. v. Bertek, Inc., 120 F.3d 16, 20 (2d Cir. 1997); see also Stifel, 2015 WL 509684, at *5 ("An arbitration award must not be set aside on the basis of the arbitrator's refusal to hear evidence that is cumulative or irrelevant . . . . Arbitrators are afforded broad discretion to determine whether to hear or not hear evidence, or whether additional evidence is necessary or would simply prolong the proceedings."); Kruse v. Sands Bros. & Co.,

226 F. Supp. 2d 484, 488 (S.D.N.Y. 2002) ("[E]ven a refusal to hear evidence does not necessarily require vacatur.").

Best played one voicemail for the Arbitrator. Liang Aff. ¶ 10; Ostreicher Decl. ¶ 15. This voicemail was dated May 9, 2013, Ostreicher Decl. ¶ 15, three days before the first date on which Tolk allegedly worked without pay. November 3 Award at 2. It relates to an entirely different dispute between the parties. See Ostreicher Decl. ¶ 15 (transcription of message). Best claims that this voicemail provides a motive for Tolk to lie about not being paid. Id. The Arbitrator did not disregard this theory. See November 3 Award at 2 ("Ostreicher further maintains that this is a fictitious claim made in retribution for his having promised the Grievant that he would be rehired on another job.") However, the Arbitrator was within his discretion not to believe this account, particularly given that Best did not provide certified payroll records for the disputed dates, and gave no explanation for this omission. See Ostreicher Decl. ¶ 18.

Best then attempted to play for the arbitrator two additional voicemails, dated May 12, 2013, and June 4, 2013. Ostreicher Decl. ¶¶ 13-14. Best claims that these voicemails demonstrate that Tolk fabricated his grievance because Tolk did not reference the wage dispute during the messages. Id, at ¶¶ 11-14. The Arbitrator could have reasonably concluded that the original voicemail was not helpful and that additional tapes would be cumulative. See Liang Aff. ¶ 10 (alleging that the Arbitratior explained at the hearing that the first tape was not helpful and additional similar tapes would be irrelevant). Finding this decision not fundamentally unfair, I decline to revisit it.

Second, Best argues that the Arbitrator should have subpoenaed Ahern. Resp.'s Reply at 5. However, Best has failed to explain why it was unable to call Ahern, its own employee, to testify without help from the arbitrator. While Best claims that "[Ahern] was not our employee,"

Ostreicher Reply Decl. ¶ 10, the sentence immediately preceding this claim admits that "[Ahern] was a Union member who worked for [Best]," id. Best's failure to secure Ahern's testimony itself is particularly surprising given its assertion that Ahern was the best person to controvert Tolk's account. Ostreicher Decl. ¶ 8. An arbitration award will not be set aside because one side does not take advantage of the opportunity to present evidence under its own control at the arbitration. See Dubois v. Macy's Retail Holdings, Inc., No. 11 CV 4904(NGG)(LB), 2012 WL 4060739, at *6 (E.D.N.Y. Aug. 17, 2012) ("[P]laintiff had the opportunity . . . to call . . . witnesses at the hearing. Plaintiff unfortunately seems to have believed that if he did not present witnesses or evidence at the arbitration, he would still be able to do so in Court. Plaintiff was mistaken.") (adopted, 2012 WL 4060586, at *1 (E.D.N.Y. Sept. 13, 2012)).

Third, respondent argues that the Arbitrator should have required the Union to produce Ahern. Resp.'s Reply at 6-7; Ostreicher Decl. ¶ 24. According to Best, the Union threatened that if Ahern testified, the Union "would institute charges against and punish [Ahern]." Ostreicher Decl. ¶ 9; see also Ostreicher Reply Decl. at ¶ 7 ("The Union stated that [Ahern] would be sanctioned if he testified in support of Best."). While Best blames the Arbitrator for "sanction[ing] the Union's position, effectively making it impossible for Ahern to testify," Ostreicher Decl. ¶ 24, it nowhere suggests that any threat was communicated to Ahern. Instead, Best's allegation is that the arbitrator refused to require the Union to produce Ahern without threat of retaliation. Ostreicher Decl. ¶ 24; Resp.'s Reply at 7.

Best's claims of witness intimidation, if true, are troubling. However, with respect to its motion to vacate, respondent has failed to carry its burden to allege "specific facts showing that there is a genuine issue for trial." Stifel, 2015 WL 509684, at *5. In response to Best's motion to vacate, the Union submitted that the alleged threat was actually an advisement that "Ahern

may not agree to testify if his testimony would involve admitting things for which he may be brought up on internal charges [by the Union] (such as violating the CBA)."  Liang Aff. ¶ 9.  Best did not allege any "specific facts" to controvert this account, instead reiterating that "[t]he Union stated that [Ahern] would be sanctioned if he testified in support of Best."  Ostreicher Reply Decl. ¶ 7.  I do not understand Best to argue that Ahern would be sanctioned for truthful testimony that benefited Best, regardless of whether he testified to a violation of the CBA. [10]  If this was the argument Best intended to make, it should have provided more than "conclusory allegations or bald assertions" regarding the Union's alleged threat.  Stifel, 2015 WL 509684, at *5.

Yet, even if I assume that Best alleged that the Union threatened to sanction Ahern for his testimony (rather than for violations of the CBA), the fact remains that this threat was not communicated to Ahern.  Liang Aff. ¶ 9.  There are no grounds to overturn an arbitration award based on witness intimidation that could have happened, but did not.

Nor does Best's claim that the Arbitrator should have required the Union to produce Ahern to testify mandate vacatur.  It was not fundamentally unfair for the Arbitrator to decline to require the Union to produce Ahern.  See Tempo Shain, 120 F.3d at 20 ("[E]xcept when fundamental fairness is violated, arbitration determinations will not be opened up to evidentiary

---

[10] While I draw all inferences in favor of the non-moving party for the purposes of analyzing the Union's motion to confirm, see D.H. Blair, 462 F.3d at 109, Best has the burden of proof with respect to its motion to vacate, Stifel, 2015 WL 509684, at *5.

Furthermore, it is difficult to imagine how Ahern could have testified in favor of Best without admitting to a violation of the CBA.  While Best claims it paid Tolk during the disputed weeks, Ostreicher Decl. ¶ 26, it does not allege that it made the notations on the envelopes required by the CBA.  See id. at ¶¶ 20, 29; CBA at 13-14.  If Ahern testified that Tolk was paid in the manner Best claims, he may have been subject to Union sanctions for failing to report this violation and/or participating in it.

review.").  First of all, as explained above, Best has failed to explain why it made no effort to secure Ahern's testimony without help from the Union.  Moreover, the Arbitrator may have reasonably concluded that Ahern's testimony was not dispositive of the parties' dispute, and therefore not worth the effort and delay needed to secure it.  Best claims that Ahern would have testified that Tolk was paid on the dates he claims he worked without compensation.  Ostreicher Decl. ¶ 8.  However, the Arbitrator may have reasoned that such testimony would not controvert Best's suspicious lack of certified payroll records for the disputed dates.  November 3 Award at 3.

Fourth, respondent alleges that, during the October 21, 2015 hearing, the arbitrator threatened to sanction Best if it did not settle the dispute.  See, e.g., Ostreicher Decl. ¶ 16.  The Union denies that any such threat was made.  Liang Aff. ¶ 11.  The Second Circuit has explained that, in order for a court to convene an evidentiary hearing to resolve a dispute regarding alleged misbehavior by the arbitrator, the party moving for vacatur must present "clear evidence of impropriety."  Matter of Andros Compania Maritima, S.A., 579 F.2d 691, 702 (2d Cir. 1978).[11] Despite using hyperbolic language to describe this exchange, see, e.g., Ostreicher Decl. ¶ 16 (asserting that "[the Arbitrator] was asking for a payoff"), ¶ 21 (characterizing the conversation as an "extortionate threat"), respondent does not allege that the Arbitrator asked Best to pay any funds to the Arbitrator.  In other words, there is no "clear evidence" that the Arbitrator asked for a bribe.

---

[11] If it made the required showing, Best would be entitled to an evidentiary hearing, not vacatur.  See Andros Compania Maritima, 579 F.2d at 697 (affirming district court denial of evidentiary hearing where record indicated that arbitrator's relationship with party was innocuous); Sanko S.S. Co. v. Cook Inds., Inc., 495 F.2d 1260, 1263 (2d Cir. 1973) (remanding for evidentiary hearing to explore relationships between arbitrators and parties).

Instead, I understand Best's submissions to allege that the Arbitrator informed Best that it would face sanctions under the CBA for paying its employees improperly, and those sanctions could be avoided by reaching a settlement with the Union. While Best alleges that it felt threatened to settle "regardless of the merits," Ostreicher Decl. ¶ 16, this falls short of the "clear evidence of impropriety" that would warrant an evidentiary hearing on this factual dispute.

Finally, the November 3 Award meets the minimal standard required to be confirmed. After examining the Arbitrator's opinion, the court finds at least a "barely colorable justification" for the award. D.H. Blair & Co., 462 F.3d at 110. Tolk testified that he was not paid for 98 hours of wages over three weeks, for work done pursuant to a contract Best had secured with a state agency. November 3 Award at 2. After the hearing, the Arbitrator requested the certified payroll Best should have prepared to submit to this state agency. Id. at 3. Instead, Best provided the Arbitrator a spreadsheet prepared from its handwritten notes. Id.; Ostreicher Decl. ¶ 18. Best gave no explanation for its lack of certified records other than the claim that the Union had these records, which strains credulity. Ostreicher Decl. ¶ 18. Best's inability to produce a more fulsome payroll record justifies the Arbitrator's conclusion that Tolk was not paid for work done on the disputed dates.

### B. June 7 Award

During the briefing of the present motions, the Union withdrew its motion to enforce the June 7 Award and requested that this dispute be remanded for further arbitration under the CBA. Sigelakis Decl. ¶ 2. The Union subsequently reinstated its motion to confirm, requesting that this court modify the award by reducing the $50,000 penalty awarded by the Arbitrator to $10,000. See Kennedy Decl. ¶ 10. Best has moved to vacate this award. Notice of Mot. to

Vacate Arbitration Awards, ECF No. 15.  For the reasons that follow, both respondent's motion to vacate and petitioner's motion to modify the award are denied at this time.

In support of its motion to vacate, Respondent argues that Arbitrator misapplied the contract by penalizing Best for paying employees in cash.  The CBA allows wages to be paid in cash if the following conditions are met: cash wages must be placed "in envelopes, on the outside of which shall be plainly marked the Employer's name, the employee's name and number, Social Security number, the hours worked and the amount of money enclosed."  CBA at 13-14.  However, the agreement later provides that "[a]ny Employer found guilty of offering cash to Floor Coverers for hours worked shall pay a fine of five thousand ($5,000.00) dollars to the Carpenter's Relief and Charity Fund after he has paid monies that were due to the Benefit Funds."  Id. at 42-43.

According to Best, this penalty provision "applies in a situation not where an employer paid his employees in cash in a completely transparent manner, but rather where the employer . . . failed to report the cash payment to the Union and failed to make Benefit Payments on the unreported cash payments."  Resp.'s Mem. at 5.  The Union, on the other hand, contends that the penalty applies anytime the employer pays an employee in cash without the required information written on the outside of the envelope, regardless of whether benefit payments are made.  Pet'r's Mem. at 2-3.

This court "ha[s] no business . . . determining whether there is particular language in the written instrument which will support the [arbitration award]."  United Steelworkers of Am., 363 U.S. at 568.  I therefore decline to resolve the parties' dispute regarding the meaning of the contract and defer to the findings of the arbitrator.  "[T]he mere fact that a different construction could have been accorded the provisions concerned and a different conclusion reached does not

mean that the arbitrators so misread those provisions as to empower a court to set aside the award." <u>Tully Constr. Co./A.J. Pegno Constr. Co., J.V. v. Canam Steel Corp.</u>, No. 13 Civ. 3037(PGG), 2015 WL 906128, at *9 (S.D.N.Y. Mar. 2, 2015) (quoting <u>Nat'l Cash Register Co. v. Wilson</u>, 171 N.E.2d 302, 305 (N.Y. 1960)). The motion to vacate is therefore denied.[12]

The Union has apparently moved to modify the June 7 Award. <u>See</u> Kennedy Decl. ¶ 10. However, none of the Union's submissions provide any legal analysis or authority in support of this motion.[13] If the Union would like the award to be modified, it is directed to file a new, adequately briefed motion. This will give respondent an opportunity to be heard on the issue of whether modification is appropriate.[14]

### C. August 15 Award

First, respondent argues that the court must vacate the August 15 Award because it was unaware of the August 10, 2016 hearing precipitating this award. Resp.'s Mem. at 6. The Funds counter that notice was proper under the CBA. Funds' Mem. at 9-11.

The record shows that the Funds sent a Notice of Intent to Arbitrate via regular and

---

[12] Best also argues that the Arbitrator misapplied the contract by imposing a $50,000 fine. Ostreicher Decl. ¶ 31; Resp.'s Mem. at 5. However, Best does not explain how this error falls under one of the limited grounds for vacatur. While the record currently before the court does not explain the basis for this penalty, the suggestion that the amount was miscalculated does not rise to the showing required to vacate the award. Furthermore, it cannot be said that no reading of the contract supports a $50,000 penalty. If the arbitrator found ten separate instances where Best paid employees in cash without the required notations on the envelope – and the record suggests at least that many, <u>see</u> June 7 Award at 2 – then the award is justifiable under the CBA. <u>See</u> CBA at 42-43.

[13] Nor does one paragraph in a declaration submitted contemporaneously with the Union's reply brief give respondent "an adequate opportunity to respond" to a new motion. <u>See</u> <u>Booking v. Gen. Star Mgmt. Co.</u>, 254 F.3d 414, 418 (2d Cir. 2011).

[14] Because the Union has withdrawn its motion to confirm the award as written, Sigelakis Decl. ¶ 2, and withdrawn its motion to remand for further arbitration, Kennedy Decl. ¶ 10, I do not consider those motions.

certified mail, to 172 Division Street, Brooklyn, NY, on May 25, 2016.  Ozard Decl. ¶ 17; id. at

Ex. I.  The certified mail return receipt was returned with the notation "undeliverable as

addressed" on July 23, 2016.  See Ozard Decl. Ex. J.  The notice sent via regular mail was not

returned to the Funds.  Ozard Decl. ¶ 17.  On June 3, 2016, the Arbitrator sent a Notice of

Hearing to 172 Division Street, Brooklyn, NY, via regular and certified mail.  Id. at ¶ 18.  The

certified mail return receipt was returned with the notation "attempted – not known" on July 2,

2016.  See Ozard Decl. Ex. L.  On August 8, 2016, the Funds left a voicemail with the phone

number Best had provided to the Funds to notify respondent of the upcoming hearing.  Ozard

Decl. ¶ 19.

 Respondent does not argue that these notices were not sent.  In fact, respondent confirms

that "Best does have its offices in the unit in which [the owner's] family lives at 172 Division

Street" but asserts that "[t]he mail boxes [at that building] are subject to tampering and mail is

sometimes placed in an incorrect mail box."  Ostreicher Reply Decl. ¶ 15.  Respondent also

argues that notice from the Funds should have been sent to the address listed in the Funds'

internal audit notes as Best's "mailing address."  Id. ¶ 16; Ozard Decl. Ex. H.

 The CBA provides for service by certified mail, including a provision that "[a] post office

receipt shall be conclusive evidence of proper service if mailed to the address designated by the

Employer when it signed the agreement."  CBA at 45.  However, "[i]f certified or registered mail

is refused or not picked up, ordinary mail shall be deemed sufficient service provided that it is

forwarded to the address of record contained in this agreement."  Id.  The only address for Best

"contained in [the] agreement" is 172 Division Street.  Id. at 1.

 The Arbitrator has already considered this evidence and concluded that Best "had legally

sufficient notice of [the August 10, 2016] proceeding and the claims against [it]."  August 15

Award at 1. Because sufficiency of the notice is determined by construing the CBA, this court must defer to the Arbitrator's conclusion. See United Paperworkers Int'l Union, 484 U.S. at 36.

Alternatively, undisputed facts show that Best was properly served under the CBA. Both the Arbitrator and the Funds sent notice of the hearing via both certified and regular mail. Ozard Decl. ¶¶ 17-18. The notice the Funds sent by certified mail was "refused"; the CBA provides that, in such an event, "ordinary mail shall be deemed sufficient service" as long as it is sent to the address in the CBA. CBA at 45. Therefore, the notice the Funds sent via regular mail to 172 Division Street, the only address given for Best in the CBA, is sufficient notice. See id. at 1; Ozard Decl. ¶ 18.

Nor can Best claim a due process violation. Due process requires only that arbitration notices be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Yukos Capital S.A.R.L. v. Samaraneftegaz, 592 F. App'x 8, 11 (2d Cir. 2014) (quoting Jones v. Flowers, 547 U.S. 220, 226 (2006)); see also Jiangsu Changlong Chems., Co. v. Burlington Bio-Medical & Sci. Corp., 399 F. Supp. 2d 165, 168 (E.D.N.Y. 2005). The disputed notices easily meet this requirement. Respondent will therefore be charged with notice of the November 10 hearing.

Best next argues that the Funds had an obligation to provide the arbitrator with the affidavits it had prepared for the Funds' auditor. Ostreicher Decl. ¶ 44. These affidavits asserted that each undersigned employee had worked fewer than eight hours on the specified day(s), and was therefore entitled to the smaller contribution Best made to the Funds for those days. Id. at ¶ 38.

Best contends that the Funds' failure to present the affidavits requires vacatur because "the award was procured by corruption, fraud, or undue means" on behalf of the Funds, 9 U.S.C. § 10(a)(1).  See Resp.'s Mem. at 8-9.  "[T]he Second Circuit has not yet articulated a test for vacating an award on this ground . . . ."  Salzman v. KCD Fin., Inc., No. 11 Civ. 5865 (DLC), 2011 WL 6778499, at *3 (S.D.N.Y. Dec. 21, 2011).  However, a party seeking to vacate an arbitration award for fraud "must first show that he could not have discovered it during the arbitration, else he should have invoked it as a defense at that time."  Karppinen v. Karl Kiefer Mach. Co., 187 F.2d 32, 35 (2d Cir. 1951); see also Salzman, 2011 WL 6778499, at *3 (quoting McCarthy v. Smith Barney Inc., 58 F. Supp. 2d 288, 293 (S.D.N.Y. 1999)).  "The purpose of requiring fraud to be 'newly discovered' before vacating an arbitration award on that ground is 'to avoid reexamination, by the courts, of credibility matters which either could have been or were in fact called into question during the course of the arbitration proceedings.'"  Beljakovic v. Melohn Prop., Inc., No. 04 Civ. 3694(JMF), 2012 WL 5429438, at *4 (S.D.N.Y. Nov. 7, 2012) (quoting Hakala v. Deutsche Bank AG, No. 01 Civ. 3366(MGC), 2004 WL 1057788, at *3 (S.D.N.Y. May 11, 2004)).

Best should have presented the affidavits it created at the August 10, 2016 hearing, of which it had adequate notice.  I have found no case requiring a party in an arbitration to present his absent adversary's case for him.  Therefore, the August 15 Award is confirmed.

### D. Attorneys' Fees and Costs

Finally, the Union and the Funds have requested attorneys' fees and costs associated with this action.  Pet. at 7; Funds' Mem. at 8-9.  The CBA provides that "[u]pon the confirmation of the arbitrator's award, the prevailing party shall, or on any appeal therefrom, be entitled to receive all court costs in each proceeding as well as reasonable counsel fees."  CBA at 46.  The

CBA further clarifies that the Funds are entitled to attorneys' fees and costs for any action to collect delinquent contributions. Id. at 30-31.

Therefore, the Funds' motion is granted in full. The Funds are awarded all attorneys' fees and costs associated with bringing this action. The Union is awarded attorneys' fees and costs associated with confirming the November 3 Award. Because neither party "prevailed" in the motion to confirm the June 7 Award, which was withdrawn during the briefing, no attorneys' fees and costs with be awarded with respect to that award.

## CONCLUSION

Respondent's motions to vacate are denied. The November 3 Award and the August 15 Award are confirmed in their entirety. The Funds are awarded attorneys' fees and costs associated with this action. The Union is awarded attorneys' fees and costs associated with its motion to confirm the November 3 Award.

SO ORDERED.


_____/s/_____
Allyne R. Ross
United States District Judge


Dated:          November 23, 2016
                Brooklyn, New York